# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-00227-SCT

*F. CHARLES PHILLIPS*

*v.*

*MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY, MISSISSIPPI HIGHWAY SAFETY PATROL, JOSEPH W. SEALS AND THOMAS E. LITTLE*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/27/2006 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | SCOTT PHILLIPS |
| ATTORNEYS FOR APPELLEES: | WILLIAM E. WHITFIELD, III |
| | KAARA L. LIND |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 04/03/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., CARLSON AND LAMAR, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.    Plaintiff F. Charles Phillips seeks to recover damages for injuries sustained when law enforcement officers used physical force during the course of an investigatory stop after mistaking him for a suspect. The Circuit Court of Forrest County granted summary judgment for the individual defendants, Mississippi Highway Patrol Officers Joseph W. Seals and Thomas E. Little, and after a bench trial found in favor of the remaining defendants, the Mississippi Department of Public Safety and the Mississippi Highway Patrol. Phillips

appeals, claiming that the trial court erred in its application of Mississippi Code Annotated § 11-46-9(1)(c) under the Mississippi Tort Claims Act.

**FACTS**

¶2.     On October 15, 2003, around 6:45 p.m., a female made a 911 call to the Hattiesburg Police Department, which was recorded on the Hattiesburg Police Department (HPD) radio transmission. She claimed her boyfriend (Jackson) took both sets of keys to her 1992 White Ford Explorer and left in the vehicle. She informed the operator that she "just filed domestic assault charges on him with Covington County." The Covington County Sheriff's Office initiated pursuit of Jackson, and HPD took over the pursuit, traveling south on Highway 49, after the suspect reached the city limits of Hattiesburg. The Covington County Sheriff's Office informed HPD that the pursuit had reached speeds of more than 100 miles per hour.

¶3.     Plaintiff F. Charles Phillips, a reserve Forrest County Deputy Sheriff, was driving from a meeting in Laurel, Mississippi, to his home in Hattiesburg, Mississippi, when he heard of the pursuit on a police radio and decided to help. Phillips was driving a white Ford Escape. He informed Jeffrey Byrd, the Forrest County Sheriff's Office dispatcher, that he was going to be traveling southbound assisting in the pursuit.

¶4.     Mississippi Highway Patrol (MHP) Troopers Donnie Rayborn, Joseph Seals, and Thomas Little were also engaged in pursuit of the suspect and communicated through the MHP radio.[1]  Dispatch informed them that the fleeing suspect had been reported as the

---

[1]Nothing in the record indicates that the MHP, including Troopers Seals, Little, and Rayborn, knew or had access to information that Phillips was involved in the pursuit.

2

perpetrator of a domestic crime earlier that day. Rayborn, ahead of the other troopers and with the suspect in sight, periodically reported his location on the radio. Seals requested the suspect's vehicle description, and dispatch described the vehicle as a white, 1992 Ford Explorer and informed him that the full registration information was unknown. Communicating over the radio, Rayborn recited the tag number, and the dispatcher repeated the number. Seals testified that he never heard the tag number.

¶5. The suspect, with Rayborn following, passed Phillips on the highway. The events that occurred for the next six minutes are disputed.

¶6. According to Seals's testimony, as Seals approached Rayborn from the rear, both traveling in the left lane of traffic, Seals saw Phillips's white Ford Escape with its hazard lights flashing, traveling south on Highway 49 in the right lane in close proximity to Rayborn. Seals testified that he advised Rayborn to conduct a "rolling roadblock" in order to stop the suspect's vehicle. Seals believed Rayborn was complying when he continued ahead of Phillips's vehicle and moved into the right lane. However, Rayborn, was, in fact, continuing after the suspect. Believing Phillips to be the suspect, Seals came alongside Phillips's car and motioned to and/or spoke to Phillips. After numerous attempts to block Phillips's vehicle, Seals successfully stopped Phillips on the right shoulder.

¶7. Seals exited his patrol car, went to Phillips's car and opened the driver's door of Phillips's vehicle. Phillips, who wearing a coat and slacks, did not show Seals a badge or any identification. Seals testified that he never asked Phillips for identification, told Phillips why he was under arrest or explained to Phillips why he was being detained. Seals also

3

testified that he issued several verbal commands to Phillips, instructing him to exit the vehicle. According to Seals, instead of exiting or placing his hands in a highly visible location, Phillips placed his hands in his lap, which Seals interpreted as a threatening gesture. Due to Phillips's non-compliance, Seals forcibly removed Phillips from his vehicle and pushed him onto the ground. Seals placed Phillips on his right shoulder and attempted to handcuff him. When Phillips was forced to the ground, his head was on or near the gravel surface abutting the road. Phillips initially failed to comply with Seals's instruction to provide his hands for handcuffing and, at some point, advised Seals he was unable to comply. Seals and Little testified that Phillips resisted, but together they were able eventually to handcuff Phillips.

¶8. Seals testified that Phillips then identified himself as a reserve deputy with the Forrest County Sheriff's Office trying to help with the pursuit. Seals and Little testified that they helped Phillips to his feet, removed the handcuffs and advised him to seek medical attention for his injuries. According to Seals, Phillips's injuries were all incurred during takedown and handcuffing and were not caused by hitting, beating or choking Phillips. Seals testified that he offered to get an ambulance for Phillips, but Phillips declined the offer. Then, according to Little, Phillips informed the Forrest County dispatcher that he was "ok." The dispatcher confirmed that Phillips made that statement.

4

¶9. On the other hand, Phillips testified that after it was communicated to him by radio to cease the pursuit, he pulled off onto the right side of the road and stopped his vehicle.[2] Seals then pulled alongside him and motioned for him to pull forward, which he did. Seals exited his vehicle, came over to Phillips's door and alone forced Phillips to the ground and handcuffed him. Phillips said further that, once Seals had him on the ground, someone grabbed him by the back of the hair and thrust his head twice into the gravel surface on the side of the road and choked him until he went unconscious. After that, he heard the instruction to get up but said he was unable to do so. Phillips was assisted off the ground while handcuffed, and then the handcuffs were taken off, though he testified that he had not identified himself at that point. Phillips testified that he was assisted to his car but no one offered to take him to the hospital or to call an ambulance.

¶10. According to the records at the emergency room, Phillips's injuries on arrival consisted of a hemorrhage in his right eye; a gaping, two-centimeter laceration in the middle of his right eyebrow, which had stopped bleeding; about a one-half-centimeter laceration to the left eyelid just below the eyebrow; and a couple of scattered abrasions to the forehead.

---

[2]This testimony is not only contradictory to that of Seals but also to that of the Forrest County Sheriff's Office dispatcher, who testified he never told Phillips to stop the pursuit. Further, the testimony is in contradiction of defense exhibit 20, a recording from the camera in the front of Seals's vehicle, which clearly shows Phillips on the highway in motion immediately prior to Seals pulling him over.

PROCEDURAL HISTORY

¶11.    Phillips filed suit, alleging negligence, against the defendants, the Mississippi Department of Public Safety and Mississippi Highway Patrol (MHP), Seals, and Little. Phillips alleged that the MHP:  (1) failed to have policies and procedures in effect regarding pursuits; (2) failed to train officers adequately regarding pursuits and arrests; and (3) failed to communicate adequately with officers.  Phillips also claimed that Defendants Seals and Little:  (1) failed to follow policies and procedures in effect, if any, regarding pursuits and arrests;  (2) failed to adequately and timely communicate with the MHP troopers and with Phillips;  (3) used excessive force in subduing Phillips; and (4) failed to assist Phillips in procuring medical treatment or calling an ambulance for him.  The defendants answered, and Seals filed a counterclaim,[3] which was dismissed with prejudice by an agreed final judgment.

¶12.    Defendants filed a motion to dismiss and/or for summary judgment. The trial court denied the motion as to the MHP, but granted the motion as to the individual defendants, Seals and Little.[4]  After a bench trial, the court entered its findings of fact and conclusions

---

[3]The counterclaim was for defamation.

[4]Releasing the individual defendants was in accordance with Mississippi Code Annotated section 11-46-7(2), which reads:

An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties.

6

of law. The court explained that Phillips failed to prove, as required under the Mississippi Tort Claims Act (MTCA): (1) that Seals and Little were acting in reckless disregard and (2) that Phillips was not engaged in criminal activity at the time he was injured. The court entered its judgment in favor of the defendants and assessed the costs against Phillips. Phillips timely appealed.

## DISCUSSION

### I. Whether Troopers Seals's and Little's Conduct Was in Reckless Disregard of the Safety and Well-being of Phillips.

¶13. This Court reviews errors of law de novo, including the proper application of the MTCA, Mississippi Code Annotated sections 11-46-1 *et seq* (Rev. 2004). *City of Jackson v. Powell*, 917 So. 2d 59 (Miss. 2005) (citing *City of Jackson v. Brister*, 838 So. 2d 274, 278 (Miss. 2003)). The findings of fact by a circuit court judge, sitting without a jury, will not be reversed on appeal where they are supported by substantial, credible, and reasonable evidence. *City of Greenville v. Jones*, 925 So. 2d 106, 109 (Miss. 2006) (citing *City of Jackson v. Perry*, 764 So. 2d 373, 376 (Miss. 2000)).

¶14. Phillips's first assertion is that the trial court's findings of fact should be subject to a heightened review since he alleges they are adopted verbatim, in pertinent part, from the defendants' trial brief. Indeed, this Court has held that heightened review was appropriate where the trial judge adopted verbatim a party's findings of fact and conclusions of law, differing only in that the trial judge filled in the blanks for the percentages of fault apportioned to the parties. *Miss. Dep't of Transp. v. Johnson*, 873 So. 2d 108, 111 (Miss.

2004).  However, this case is more akin to ***Delta Regional Medical Center v. Venton***, 964 So. 2d 500 (Miss. 2007).  The Venton Court found deferential review appropriate because, in addition to adoption of some findings from each party's findings, the trial court included its own findings.  ***Id.*** at 503-04.  The Court rejected the argument that ***Johnson*** mandated heightened review in such circumstances.  ***Id.***

¶15.    This case is distinguishable from ***Johnson***.  After a careful comparison of the defendant's trial brief and the trial judge's findings, we find that, while the trial judge adopted some sentences, portions of sentences and phrases verbatim from the defendant's trial brief, the majority of the findings are the trial court's own. Similar to ***Venton***, in this case, the trial judge's findings of fact consisted mostly of his own findings.  Therefore, we find that deferential review of the court's findings is appropriate.

¶16.    The MTCA provides the exclusive remedy for Phillips in his claims against the MHP. Miss. Code Ann. § 11-46-7(1) (Rev. 2004).  The Legislature of this state has expressly determined that as a matter of public policy, the state and its political subdivisions are immune from suit due to any "tortious act or omission" by any employee of the state or its political subdivisions.  However, there are exceptions. The MTCA states in pertinent part:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:

. . . .

> (c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection *unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury . . . .*

8

Miss. Code Ann. § 11-46-9(1)(c)(Rev. 2004).

¶17. In order to recover in this case, Phillips must prove by a preponderance of evidence that the defendants acted in reckless disregard of his safety and that he, the claimant, was not engaged in criminal activity at the time of injury. *Simpson v. City of Pickens*, 761 So. 2d 855, 859 (Miss. 2000).

¶18. It is undisputed that Seals and Little were acting within the course and scope of their duties relating to police protection. The question is whether they acted in reckless disregard of the safety or well-being of Phillips.

¶19. Reckless disregard has been defined by this Court as a higher standard than gross negligence, and it embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act. *City of Greenville v. Jones*, 925 So. 2d 106, 110 (Miss. 2006); *City of Jackson v. Powell*, 917 So. 2d 59, 71 (Miss. 2005); *Collins v. Tallahatchie County*, 876 So. 2d 284, 287 (Miss. 2004). This Court will look to the totality of the circumstances when considering whether someone acted in reckless disregard. *City of Ellisville v. Richardson*, 913 So. 2d 973, 978-979 (Miss. 2005); *City of Jackson v. Brister*, 838 So. 2d 274, 279 (Miss. 2003) (finding that our case law requires that the circuit judge look at the totality of the circumstances in determining whether the officers acted with reckless disregard to public safety and that he base his findings on substantial, credible, and reasonable evidence). This Court has held that "the nature of the officers' actions is judged on an objective standard with all the factors that they were confronted with, taking into account the fact that the officers must make split-second decisions." *Powell*, 917 So. 2d at

9

72 (citing ***Graham v. Connor***, 490 U.S. 386, 396-97, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (citing ***Terry v. Ohio***, 392 U.S. 1, 20-22 (1968))). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." ***Graham***, 490 U.S. at 392.

¶20. Phillips argues that the troopers' failure to identify his vehicle as the wrong vehicle, failure to identify him as the wrong suspect and the actions taken against him, resulting in injuries, constitute reckless disregard. The MHP responds that its officers acted appropriately under the circumstances.

¶21. On two previous occasions this Court has considered whether police officers' mistaken arrests of individuals rose to the level of reckless disregard. In ***Foster v. Noel***, this Court held that a police officer's failure to investigate before obtaining a warrant for the plaintiff's arrest constituted reckless disregard. ***Foster v. Noel***, 715 So. 2d 174, 179 (Miss. 1998). In ***Foster***, the manager of a Jitney Jungle observed a black man who had been shoplifting enter a car with another black man and reported to the police the perpetrator's gender, race, name and the tag number of the car he was driving. ***Foster***, 715 So. 2d at 175-76. The police officer filled out an affidavit and obtained a warrant for Jacqueline Noel, the owner of the truck with the tag number given; however, neither her name nor her gender matched the information provided to the officer. ***Id.*** The Court found that the officer acted in reckless disregard for the plaintiff's safety and well-being "by inserting [the plaintiff's] name in the affidavit for an arrest warrant based solely upon a car tag number although he knew that [the manager] stated two black men stole the [merchandise]." ***Id.*** at 179. The

10

Court characterized the officer's actions as "an intentional act taken in reckless disregard of the adverse effect upon [the plaintiff] of the wrongful arrest to follow therefrom." *Id.*

¶22.    Eight years later, in *City of Greenville v. Jones*, this Court again considered whether police officers acted in reckless disregard when they mistakenly identified and arrested the plaintiff. *Jones*, 925 So. 2d 106. The Court held that the officer's actions in that case were, at most, mere negligence and did not constitute reckless disregard. *Id.* at 121. In *Jones*, in the course of investigating a series of bomb-threat calls, the police traced the calls to a cellular telephone service provider and requested from that provider the phone records associated with the number from which the threats were made. *Id.* at 107-08.

¶23.    When the provider's employee entered the number to obtain the records, the employee transposed two numbers and retrieved the plaintiff's phone records. *Id.* at 108. "[P]age two of the packet revealed that Jones owned the cellular phone bearing the transposed number; however, pages 3-6 of the packet revealed that the four bomb threat calls had been placed from the cellular phone bearing the untransposed number." *Id.* The plaintiff asserted that a careful review by the officers of the package would have revealed the mistake. *Id.* at 110. The trial court found that the police conducted an "inadequate" and "careless" investigation. *Id.* at 119. This Court reversed the trial court, finding that the trial court ruling was "not supported by substantial, credible and reasonable evidence." *Id.* The Court distinguished *Jones* from *Foster*, and found that the most plaintiffs had proven was "that one or more of

11

the [Greenville] officers were negligent, thus causing the City of Greenville to be exempt from liability under the MTCA."[5] *Id*.

¶24.    The case *sub judice* is easily distinguished from **Foster**, where the officers intentionally disregarded information they had been given, resulting in the mistaken arrest. **Foster,** 715 So. 2d 174. Unlike **Foster**, the evidence in this case establishes that Seals knew only the description of the vehicle.  When Seals requested a description of the vehicle, he was informed that he was looking for a white Ford Explorer and that the registration information was unknown.  He knew only the make, model, and color of vehicle for which he was looking. Unlike the facts presented in either **Foster** or **Jones**, the officers involved in this case were required to make split-second decisions while involved in the high-speed pursuit of a violent suspect.

¶25.    Presented with conflicting testimony, the trial court made findings of fact which we consider to be supported by substantial and credible evidence.  The trial court found that Seals was engaged in a high-speed pursuit, which had at times reached more than 100 miles per hour, attempting to subdue a fleeing perpetrator of a violent crime.  Under those circumstances, Seals requested a description of the suspect's vehicle and looked for a vehicle based on the information he was given.  Unaware that Phillips, a reserve officer, was attempting to participate in the pursuit in his personal vehicle (also a white SUV), Seals pulled over a vehicle which appeared to fit  the description he had been given, which was

---

[5]The cell phone service provider was determined to be at fault and paid the plaintiff damages.

traveling very near to Rayborn at the time Seals was approaching Rayborn to assist him in the pursuit. Seals knew that the suspect had failed to yield to Rayborn, who was attempting to pull the suspect over. After the stop, Phillips, by his own admission, neither identified himself nor complied with Seals's requests during takedown and handcuffing. The trial court concluded that Phillips was noncompliant and resisted arrest.

¶26. Accepting the trial court's factual findings, we review the officers' actions "on an objective standard with all the factors that they were confronted with," and find that the officers did not act in reckless disregard. Although the officer mistakenly identified Phillips as the suspect, Phillips failed to prove that Seals and Little acted in any way other than reasonably under the circumstances. Phillips did not meet his burden of showing by a preponderance of the evidence that Seals intentionally disregarded information and thus, acted in reckless disregard when he misidentified Phillips or his vehicle.[6]

### CONCLUSION

¶27. Based on the trial court's findings of fact, which we find to be supported by substantial, credible, and reasonable evidence, we find that the troopers acted reasonably under the circumstances with which they were confronted. The Court further finds they did not act in reckless disregard of the safety and well-being of Phillips. Thus, pursuant to the

---

[6]The trial court also found that Phillips was tacitly engaged in "criminal activity" (i.e. engaging in emergency vehicular operations without the right equipment or vehicle, failure to yield to emergency vehicles, failure to comply with an officer's traffic orders, and refusal to comply with an officer's request), but since the issue of reckless disregard is dispositive, we need not address whether Phillips was engaged in criminal activity at the time he was injured.

13

provisions of the MTCA, the Mississippi Department of Public Safety and the Mississippi Highway Patrol are exempt from liability in this case. The judgment of the trial court is affirmed.

¶28.    **AFFIRMED.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., EASLEY, CARLSON AND DICKINSON JJ., CONCUR.   GRAVES, J., CONCURS IN RESULT ONLY. RANDOLPH, J., NOT PARTICIPATING.**